**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-3293
_____

UNITED STATES OF AMERICA

v.

DUANE JACKSON,
a/k/a Weez, a/k/a Weezy,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:22-cr-00018-002)
District Judge:  Honorable William S. Stickman IV
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 12, 2026
_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, SCIRICA[*] and McKEE, <u>Circuit</u> <u>Judges</u>.

(Opinion Filed: July 29, 2026)
_____

OPINION[**]
_____

---

[*] The Honorable Anthony J. Scirica was unavailable to participate in the decision in this case after submission to the merits panel.  This opinion is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d) and 3d Cir. I.O.P. 12.1(b).

[**] This disposition is not an opinion of the full Court and, pursuant to 3d Cir. I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Duane Jackson challenges his convictions for possession of a firearm as a felon and conspiracy to make false statements in connection with the acquisition of firearms under the Second Amendment, the Commerce Clause, and on several other bases. For the following reasons, we will affirm.

I.

We write primarily for the parties and so recite only the facts essential to our decision.

In 2015, Jackson pled guilty in the United States District Court for the Western District of Pennsylvania to conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349 and was sentenced to 18 months of incarceration, followed by three years of supervised release. His term of supervised release commenced in 2017. It was revoked in 2019 after Jackson committed multiple violations, including two instances in which he led police on high-speed car chases while he had small children in his car. The District Court sentenced Jackson to six months of imprisonment, followed by another two years of supervised release. Jackson additionally pled guilty in state court to child endangerment and other offenses arising from this same conduct and was sentenced by the state court to 11 months and 29 days to 1 year, 11 months, and 28 days of incarceration, followed by four years of probation.

Jackson was once again released to begin his federal term of supervised release and state term of probation in April 2020. By April 2021, however, he and two other men — John Moon and Donald Ware, Jr. — began a conspiracy to make straw purchases

of firearms from gun shops.  Under their scheme, Moon and Ware would represent that they were the true purchasers when those guns were, in fact, going to Jackson who was prohibited from possessing them due to his felon status.

Once the scheme was discovered, Jackson was indicted in the United States District Court for the Western District of Pennsylvania on five counts, including one count of conspiracy to make false statements in association with the acquisition of a firearm in violation of 18 U.S.C. §§ 371 and 922(a)(6), and four counts of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Jackson subsequently moved to dismiss the indictment, arguing that §§ 922(a)(6) and (g)(1) violated the Second Amendment and Commerce Clause, and were unconstitutionally vague.  The District Court denied the motion.  Jackson consequently entered into a plea agreement in which he agreed to plead guilty to one count of conspiracy to make false statements in association with the acquisition of a firearm and two counts of felon in possession.  In doing so, Jackson waived his right to appeal, save for those issues raised in his motion to dismiss.  The District Court accepted the plea, and imposed a sentence of 120 months of incarceration, followed by three years of supervised release.  Jackson timely appealed.

II.[1]

Jackson challenges his convictions under the Second Amendment, the Commerce

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  When reviewing a motion to dismiss the indictment, we review the District Court's factual findings for clear error and its legal conclusions de novo.  See United States v. Harris, 144 F.4th 154, 157 (3d Cir. 2025); United States v. Stock, 728 F.3d 287, 291 (3d Cir. 2013).

Clause, and on several other bases. We consider each in turn.

A.

Jackson first asserts an as-applied Second Amendment challenge, contending that his prior disqualifying felonies — conspiracy to commit bank fraud and firearm possession — are non-violent offenses that do not justify disarming him under § 922(g)(1) and that the false statements of his co-defendant, Donald Ware Jr., about the true buyer of the firearms are therefore immaterial under § 922(a)(6) as Jackson was not truly prohibited from purchasing the firearms. These arguments, however, are foreclosed by our precedent which provides that the Second Amendment right to possess firearms does not extend to those, like Jackson, who were on federal supervised release or state probation at the time of the underlying conduct. See United States v. Moore, 111 F.4th 266, 273 (3d Cir. 2024) ("A convict completing his sentence on supervised release does not have a Second Amendment right to possess a firearm."); United States v. Quailes, 126 F.4th 215, 223 (3d Cir. 2025) ("Because parolees and probationers—like convicts on federal supervised release—are still serving their sentences, the Second Amendment affords them no protection."); see also Jackson Br. 26 ("This holding in *Moore* arguably applies to Mr. Jackson."). We will therefore affirm Jackson's convictions on this basis.

B.

Jackson separately challenges our method of evaluating as-applied Second Amendment challenges to § 922(g)(1) pursuant to Range v. Attorney General, 124 F.4th 218 (3d Cir. 2024) (en banc) and Pitsilides v. Barr, 128 F.4th 203 (3d Cir. 2025). According to Jackson, this test is an "ill-defined dangerousness inquiry" which violates

4

the Fifth Amendment, Sixth Amendment, separation of powers doctrine, and Due Process Clause by: (1) judicially re-writing § 922(g)(1) to "include an extra-textual dangerousness element;" (2) permitting judges, rather than juries, to find this new element; and (3) sanctioning an unbounded and speculative inquiry into a "defendant's risk of danger based on his past." Jackson Br. 11, 23. We disagree.

As Jackson also acknowledges, his challenge to the dangerousness inquiry is once again foreclosed by Moore.[2] See 111 F.4th at 273; see also Quailes, 126 F.4th at 223. In other words, because Jackson's status as a state probationer and federal supervisee deprives him of his Second Amendment right to possess firearms, he has no grounds on which to contest the method used to evaluate Second Amendment challenges to the statute prohibiting felons from possessing firearms. We thus decline to vacate Jackson's convictions on this basis.

## C.

Jackson finally claims that his §§ 922(a)(6) and (g)(1) convictions violate the Commerce Clause because § 922(g)(1) grants the Government near-limitless authority to criminalize a felon's possession of a firearm so long as "the item once traveled across state lines at some point in its lifetime, no matter how distant or remote in time."[3] Jackson Br. 28 (quoting United States v. Seekins, 52 F.4th 988, 989 (5th Cir. 2022) (Ho,

---

[2] The Government also suggests that these arguments are barred by Jackson's appellate waiver because they were not raised in his original motion to dismiss the indictment. In light of Jackson's concession, however, we need not reach this issue.

[3] Jackson does not make any argument specific to § 922(a)(6) and generally treats the two statutes as if they rise and fall together. We will thus not separately address § 922(a)(6).

J., dissenting from denial of rehearing en banc)). But this argument, once again, is foreclosed by a long line of precedent from the Supreme Court and our Court. See, e.g., Scarborough v. United States, 431 U.S. 563, 566–67 (1977); United States v. Singletary, 268 F.3d 196, 197 (3d Cir. 2001). And while Jackson suggests that the rationale of those cases has been eroded by subsequent caselaw, none of the cases he cites — including NFIB v. Sebelius, 567 U.S. 519 (2012), United States v. Lopez, 514 U.S. 549 (1995), and Gonzales v. Raich, 545 U.S. 1 (2005) — are in actual tension with this precedent. See Singletary, 268 F.3d at 205 (cautioning against overreading the Supreme Court's Commerce Clause decisions). We therefore decline to reconsider our prior rulings on this basis.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.